## FOX FILM CORP. v. OKLAHOMA CITY CO.

No. 20870, Opinion Filed March 22, 1932.

Rehearing Denied Dec. 27, 1933.

George H. Giddings, Sr., for plaintiff in error.

Ledbetter, Stuart, Bell & Ledbetter, for defendant in error.

KORNEGAY, J. This is a proceeding in error to reverse the action of the lower court in rendering judgment in favor of the landowner against the tenant under a lease, which is as follows:

"This lease made this 17th day of November, 1923, by and between Oklahoma City Company, a corporation, party of the first part, and Fox Film Corporation, party of the second part,

"Witnesseth, that the said first party in consideration of the covenants and agreements hereinafter set forth does by these presents demise, lease and let unto the second party, and the second party does hire and take from the first party, the following described property situated in the county of Oklahoma, state of Oklahoma, to wit: The first and second stories of the premises situated at the numbered 121 and 123 South Hudson street, Oklahoma City, Oklahoma, to be used and occupied for the business of a motion picture film exchange.

"To Have and to Hold the same to the second party from the first day of January, 1924, to the the thirty-first day of December, 1928. And said second party in consideration of the premises herein set forth agrees

to pay to the first party as rental for above described premises the sum of eleven thousand eight hundred fifty dollars ($11,850.-00) payable at the rate of one hundred ninety-seven dollars fifty cents ($197.50) per month on the first day of each month in advance

"The party of the first part covenants that it has, or will prior to January 1st, 1924, in full compliance with all laws, ordinances, rules and regulations of all federal, state, city, and municipal authorities having jurisdiction thereof, make the alterations, additions and improvements in the demised premises as shown upon the annexed blue prints, and will install at its own cost and expense and in full compliance with said laws, ordinances, rules, regulations and authorities, a complete gas heating plant or system, with radiators sufficient to heat the demised premises in zero weather at seventy degrees fahrenheit, and will also equip the said premises to the satisfaction of the said second party with poster racks in that portion of said premises reserved for that purpose, all of which shall be in full compliance with said blue prints.

"It Is Further Agreed that the second party shall not assign this lease without the written consent of the first party; and it is also agreed that upon the failure to pay the rentals or any part thereof as herein provided, or to otherwise comply with the terms and conditions of this lease, by the second party, then the first party may declare this lease at an end and void, and re-enter and take possession of said premises.

"It is Further Agreed that the second party shall in case of fire or other damage give immediate notice thereof to the first party, who shall thereupon cause the damage, at its own cost and expense, to be promptly repaired, and the rent shall abate while the demised premises are untenantable. If the building be totally destroyed by fire or earthquake or other cause or shall be so damaged that it is necessary to reconstruct the building, then and in that event this agreement shall cease and come to an end and the rent paid up to the time of the destruction.

"It Is Further Agreed that if by reason of any law, ordinance, rule or regulation of any national, state, city, or local authorities, board of fire underwriters or other authorities, the premises hereby demised are rendered and made unfit for or forbidden to be used for a motion picture film exchange, the second party may sublet the premises for any purpose not deemed extrahazardous on account of fire, and shall be given a reasonable opportunity to obtain other premises for the purpose of a motion picture film exchange.

"It Is Further Agreed that the first party shall make all repairs, alterations and improvements to the exterior of said premises and all alterations, repairs and improvements structural in their nature, which shall be required by any duly constituted authority, or in order to maintain the building and the demised premises in good state of repair and condition.

"It Is Further Agreed, by and between the parties hereto that the second party shall pay all water, lights, gas and garbage charges before delinquent, and shall permit no waste or injury to said premises, and shall use proper precautions in the conduct of their business so as to create no unnecessary fire hazard to said premises or adjacent premises, and shall keep the interior of said premises in good condition, excepting, however, that nothing htrein contained shall be deemed to require the second party to make any alterations, repairs or improvements, structural in their nature.

"It Is Further Agreed: that at the end of this lease, or sooner termination thereof, the second party shall give peaceable possession of the premises to the first party in as good condition as they are now, the usual wear and tear and damage by the elements alone excepted. And on the non-payment of the rent or any part thereof, at the time as above specified, the first party may distrain from rent due and declare this lease at an end and void and re-enter and recover possession by forcible entry and detainer, and notice of such election and demand of possession are hereby waived. This lease shall not be considered renewed except by agreement of the parties.

"The covenants and agreements of this lease shall extend to and be binding upon the heirs, executors and assigns of the parties hereto.

"Witness our hands and seals first above written.

"Oklahoma City Company,
"By J. M. Whiteley, President.
"Fox Film Corporation,
"By _____, Vice-Pres."

The tenant paid the rent until May, 1926, then refused to pay any more on account of the ordinances, as alleged, of Oklahoma City forbidding the use of the building in its business. The ordinances were introduced in evidence that were in existence at the time of the making of the contract, as well as some correspondence between the parties, covering a change in the form of the lease that was submitted when the plaintiff originally leased a building across the street to the plaintiff in error for conducting its business, from which place the plaintiff in error moved to the location involved in this lease.

The case appears to have been finally tried by the court, and the assignments of error are seven in number, going to the

overruling of the motion for new trial, and the judgment being against the law and the evidence, and the claim is made that the contract of lease was made in violation of the city ordinance prohibiting the renting of a nonfireproof building for a film exchange, and also the complaint was made of the court's holding that the lease was divisible, and that a part was void, which provided for the leasing of a nonfireproof building, and that the part permitting a subletting in case of trouble over the ordinances was void.

The fifth assignment of error was based upon the finding of the court that neither party knew at the time the contract was made that the ordinance was in existence, and in holding that the want of knowledge of the ordinance prevented the contract from being illegal in its entirety, alleging that both parties had constructive knowledge of the ordinance.

The seventh assignment was to the effect that the court erred in holding that the contract was valid, because the court's conclusions of fact showed that the contract would not have been entered into by the plaintiff in error had it not been the same was to be used by the plaintiff in error for the purpose of a film exchange, in violation of law, and was void in its entirety.

There was a prayer for the petition in error to be heard and determined, and the judgment be reversed and judgment herein rendered or remanded to the court below with directions.

The petition below was in ordinary form for the balance due on the installments of the lease at $197.50 a month, and for the unexpired term for which payment had not been made at the beginning of each month as called for in the lease, aggregating the sum of $7,500, as alleged.

There was a good deal of evidence as to the circumstances surrounding the making of the contract, and the correspondence between the parties, and the passing of the city ordinances on the subject, and as to either side knowing anything about the city ordinance that is relied on by the defendant to invalidate the contract and save itself from liability.

In the answer of the defendant below, the execution of the contract was admitted, but everything else practically denied that was alleged. The findings of fact appear at page 114 of the record, and are as follows:

"In this case the plaintiff sues the defendant for the rents of a certain building, which the plaintiff claims to have been leased to the defendant, by written lease, dated November 17, 1923, to run from January 1, 1924, for five years. That by the terms of the lease it was specially leased for the purposes of using it for a film exchange, and as expressed in the lease itself. The lease further provides that in case there is an ordinance prohibiting the use of the property as a film exchange, then that the defendant should sublet the property to somebody else,—that is, the prime purpose of the lease was to use it as a film exchange but in case it could not be used as a film exchange on account of legal objections then the defendant was to be permitted to sublet the property for other purposes. The question involved in the case is as to whether or not the lease in its terms is void by reason of the fact that at the time the lease was made there was a law, or rather an ordinance of Oklahoma City, prohibiting the use of this character of property for film exchange purposes. If the lease was limited exclusively to the use of the property for film exchange purposes, then there is no question but the same was void under the ordinances of the city. The question then arises as to whether the provision of the lease providing for the subletting of the property for other purposes in case it could not be used for film exchange purposes, would take it out of the statutory provision making it void and providing for it being used for other purposes, making it a divisible contract.— that is, one portion of it is void but when that part of it which is void is unenforceable is the other portion of the contract such that it would be binding upon the defendant to sublet it or use it for other purposes.

"The court finds that the Fox Film Corporation would not have entered into the contract excepting that it expected to use the property for film exchange purposes, and that the Oklahoma City Company would not have entered into the contract excepting upon the provision that if it could not be used for film exchange purposes then it was to be sublet or used for other purposes.

"The court finds that at the time of the making of the contract there was an ordinance in force in the city of Oklahoma City against the use of property of this kind for film exchange purposes, but that neither party were advised of the existence of such an ordinance at the time they made the contract."

The journal entry of judgment shows the waiving of the jury after it was empaneled and sworn to try the case, and the rendition of judgment for the sum of $6,123.50, with interest on each of the monthly payments of $197.50, in accordance with its due date. Motion for new trial was filed, setting up the grounds that appear to be in the assignments of error, and

supersedeas bond was given, and the case was brought here.

The brief on behalf of the plaintiff in error is based on the theory that the contract was indivisible, and that the maxim as stated, "Ex dolo malo oritur actio," and "In pari delicto potior esse conditio defendentis," applied.

As applied to the present case, the ordinance evidently was not in present contemplation, and neither side knew it existed. However, when one examines the amendment of 1920 that is relied upon, he is in very grave doubt whether the amendment had any force. However, shortly after it was discovered that the city authorities were going to enforce this amendment to "the letter," a term used by the city in its communication, indicative of the fact that no one, not even the city authorities, had paid any attention to the existence of the ordinance or its application, the ordinance was changed in such a way that no longer could the ordinance be used as a basis for the contention.

Evidently the parties had in mind that there might be such a law made when they made the contract. The building was used and occupied for several months after the discovery, and for several months after the Fox Film Corporation learned that the original ordinance would forbid storage of the films in the building, and also for several months after the impediment was removed by an amendment of the ordinance.

Under these conditions, it does not appear to us that this defense should be allowed, and whether there be technical objections to the findings, or the form of the findings, would make no difference. The Fox Film Corporation in this case had a right to use the building which it had acquired. It put the owner of the building to the expense of remodeling for its purposes, and enjoyed the fruits. We cannot say that the law of vis major would apply in this case. It is evident that the Fox Film Corporation decided that it would not go on with the contract. We think it should have been required to pay the rent reserved, in accordance with the findings of the court below, and the case is affirmed.

LESTER, C. J., CLARK, V. C. J., and HEFNER, CULLISON, SWINDALL, and ANDREWS, JJ., concur. McNEILL, J., concurs in the reasoning, but dissents to the syllabus. RILEY, J., absent.